UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| ROSA E. MORATAYA | : | |
| | : | |
| v. | : | C.A. No. 07-198S |
| | : | |
| MICHAEL J. ASTRUE | : | |
| Commissioner of Social Security | : | |

**REPORT AND RECOMMENDATION**

Lincoln D. Almond, United States Magistrate Judge

This matter is before the Court for judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Supplemental Security Income ("SSI") benefits under the Social Security Act (the "Act"), 42 U.S.C. § 405(g). Plaintiff filed her Complaint on May 29, 2007 seeking to reverse the decision of the Commissioner. On November 16, 2007, Plaintiff filed a Motion to Reverse Without a Remand for a Rehearing or, Alternatively, with a Remand for a Rehearing. (Document No. 5). On December 11, 2007, the Commissioner filed a Motion for an Order Affirming the Decision of the Commissioner. (Document No. 6).

This matter has been referred to me for preliminary review, findings and recommended disposition. 28 U.S.C. § 636(b)(1)(B); LR Cv 72. Based upon my review of the record and the legal memoranda filed by the parties, I find that there is substantial evidence in this record to support the Commissioner's decision and findings that the Plaintiff is not disabled within the meaning of the Act. Consequently, I recommend that the Commissioner's Motion for an Order Affirming the Decision of the Commissioner (Document No. 6) be GRANTED and that the Plaintiff's Motion to Reverse Without a Remand for a Rehearing or, Alternatively, with a Remand for a Rehearing be DENIED. (Document No. 5).

## I. PROCEDURAL HISTORY

Plaintiff filed an application for SSI on March 18, 2004, alleging disability as of May 1, 2002. (Tr. 72-75). Her claim was denied initially (Tr. 39, 41-44) and on reconsideration. (Tr. 40, 47-49). Plaintiff requested an administrative hearing. (Tr. 51). On November 17, 2006, Administrative Law Judge Martha H. Bower ("ALJ") held a hearing at which Plaintiff, represented by counsel and assisted by an interpreter, a vocational expert ("VE") and a medical expert ("ME") appeared and testified. (Tr. 386-406). The ALJ issued a decision on November 22, 2006 finding that Plaintiff was not disabled during the period at issue. (Tr. 16-28). The Appeals Council denied Plaintiff's request for review on May 4, 2007 (Tr. 5-11), making the ALJ's decision the final decision of the Commission. A timely appeal was then filed with this Court.

## II. THE PARTIES' POSITIONS

Plaintiff argues that (1) the ALJ did not adhere to SSR 00-4p; (2) the ALJ should have obtained expert testimony from a psychiatrist or psychologist; and (3) the ALJ's analysis of Dr. Teixeira's examination is unsupported by substantial evidence.

The Commissioner disputes Plaintiff's claims and argues that there is substantial evidence in the record to support the ALJ's finding that Plaintiff was not disabled during the relevant time period.

## III. THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Ortiz v. Sec'y of Health

and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).

Where the Commissioner's decision is supported by substantial evidence, the court must affirm, even if the court would have reached a contrary result as finder of fact. Rodriguez Pagan v. Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Frustaglia v. Sec'y of Health and Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

The court must reverse the ALJ's decision on plenary review, however, if the ALJ applies incorrect law, or if the ALJ fails to provide the court with sufficient reasoning to determine that he or she properly applied the law. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled. Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001) citing, Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985).

The court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences. Seavey, 276 F.3d at 8. To remand under sentence four, the court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. Id.; accord Brenem v. Harris, 621 F.2d 688, 690 (5th Cir. 1980)

(remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow her to explain the basis for her decision. Freeman v. Barnhart, 274 F.3d 606, 609-610 (1st Cir. 2001). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council). After a sentence four remand, the court enters a final and appealable judgment immediately, and thus loses jurisdiction. Freeman, 274 F.3d at 610.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court...may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g). To remand under sentence six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for failure to submit the evidence at the administrative level. See Jackson v. Chater, 99 F.3d 1086, 1090-1092 (11th Cir. 1996).

A sentence six remand may be warranted, even in the absence of an error by the Commissioner, if new, material evidence becomes available to the claimant. Id. With a sentence six remand, the parties must return to the court after remand to file modified findings of fact. Id.

The court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings. Id.

## IV. THE LAW

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

### A. Treating Physicians

Substantial weight should be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. See Rohrberg v. Apfel, 26 F. Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments, is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. See Keating v. Sec'y of Health and Human Servs., 848 F.2d 271, 275-276 (1st Cir. 1988).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986). When a

treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical conditions at issue; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R § 404.1527(d). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. See 20 C.F.R. § 404.1527(d)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. 20 C.F.R. § 404.1527(e). The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity (see 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the province of the Commissioner. 20 C.F.R. § 404.1527(e). See also Dudley v. Sec'y of Health and Human Servs., 816 F.2d 792, 794 (1st Cir. 1987).

**B. Developing the Record**

The ALJ has a duty to fully and fairly develop the record. Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991). The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right if counsel is not retained. See 42 U.S.C. § 406; Evangelista v. Sec'y of Health and Human Servs., 826 F.2d 136, 142 (1st Cir. 1987). The obligation to fully and fairly develop the record exists

if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel. Id. However, where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty. See Heggarty, 947 F.2d at 997, citing Currier v. Sec'y of Health Educ. and Welfare, 612 F.2d 594, 598 (1st Cir. 1980).

**C. Medical Tests and Examinations**

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 416.917; see also Conley v. Bowen, 781 F.2d 143, 146 (8th Cir. 1986). In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision. Carrillo Marin v. Sec'y of Health and Human Servs., 758 F.2d 14, 17 (1st Cir. 1985).

**D. The Five-step Evaluation**

The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth,

if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f). Significantly, the claimant bears the burden of proof at steps one through four, but the Commissioner bears the burden at step five. Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five-step process applies to both SSDI and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant bears the ultimate burden of proving the existence of a disability as defined by the Social Security Act. Seavey, 276 F.3d at 5. The claimant must prove disability on or before the last day of her insured status for the purposes of disability benefits. Deblois v. Sec'y of Health and Human Servs., 686 F.2d 76 (1st Cir. 1982), 42 U.S.C. §§ 416(i)(3), 423(a), (c). If a claimant becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability. Id.

**E. Other Work**

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. Seavey, 276 F.3d at 5. In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a

claimant. Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines (the "grids"). Seavey, 276 F.3d at 5. Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. Id.; see also Heckler v. Campbell, 461 U.S. 458, 103 S. Ct. 1952, 76 L.Ed.2d 66 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills. Nguyen, 172 F.3d at 36. In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert. Heggarty, 947 F.2d at 996. It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy. See Ferguson v. Schweiker, 641 F.2d 243, 248 (5th Cir. 1981). In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.

**1. Pain**

"Pain can constitute a significant non-exertional impairment." Nguyen, 172 F.3d at 36. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged. 42

U.S.C. § 423(d)(5)(A). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the First Circuit's six-part pain analysis and consider the following factors:

> (1) The nature, location, onset, duration, frequency, radiation, and intensity of any pain;
>
> (2) Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);
>
> (3) Type, dosage, effectiveness, and adverse side-effects of any pain medication;
>
> (4) Treatment, other than medication, for relief of pain;
>
> (5) Functional restrictions; and
>
> (6) The claimant's daily activities.

Avery v. Sec'y of Health and Human Servs., 797 F.2d 19, 29 (1st Cir. 1986). An individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

**2. Credibility**

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. Rohrberg, 26 F. Supp. 2d at 309. A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. See Frustaglia, 829 F.2d at 195. The failure to articulate the reasons for discrediting subjective pain testimony requires

that the testimony be accepted as true. See DaRosa v. Sec'y of Health and Human Servs., 803 F.2d 24 (1st Cir. 1986).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case. See Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982). If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)).

## V. APPLICATION AND ANALYSIS

Plaintiff was fifty-five years old on the date of the ALJ's decision. (Tr. 72). Plaintiff completed the sixth grade (Tr. 110), speaks Spanish (Tr. 106) and previously worked as an office cleaner and a jewelry assembler. (Tr. 80-82, 107, 403-404). Plaintiff initially alleged disability due to depression, left arm problems, shortness of breath and anxiety. (Tr. 99, 107).

On March 5, 2003, Dr. Karen Ng saw Plaintiff to follow up on complaints of depression, hypertension and right shoulder pain. (Tr. 172). Plaintiff reported that Paxil helped her anxiety and depression, and she complained of right elbow and finger pain. Id. Dr. Ng examined Plaintiff and assessed uncontrolled hypertension, improved anxiety and depression and probable osteoarthritis of the shoulders and right elbow. (Tr. 173). On September 24, 2003, Dr. Ng saw Plaintiff, who reported that she was sleeping better, was not sleepy during the daytime and that her depression was stable. (Tr. 164). She reported being anxious at times when preoccupied over her son's well-being, but otherwise she was not anxious. Id. She also complained of a headache that came and went over the past two months. Id. Plaintiff appeared a bit anxious, but her exam was otherwise normal; and

Dr. Ng assessed hypertension, not well controlled, anxiety and depression, stable shoulder osteoarthritis and a probable tension headache. (Tr. 165). On November 10, 2003, Dr. Ng assessed uncontrolled hypertension and stable depression and anxiety, and Plaintiff asked her to fill out disability forms. (Tr. 160-161).

In April 2004, Plaintiff reported to the Commissioner that she had shoulder pain that began two years earlier which was constant and was relieved "a little" with medication. (Tr. 91). She stated that she engaged in "normal activities" and that pain made it hard to clean and that depression made her lose sleep. (Tr. 92). She took care of her personal needs, prepared her own meals, did all of her housework, shopped, watched television, and read books and newspapers. (Tr. 94). She reported having no social activities and that she "sometimes" had problems with memory and concentration. (Tr. 95).

On April 27, 2004, Plaintiff complained of decreased libido and requested a referral for counseling for depression with a goal of reducing her medication. (Tr. 149). Subsequently, Plaintiff reported that she was taking her depression medication and was feeling well; she declined counseling and her depression was assessed as stable. (Tr. 146-147).

On May 8, 2004, Dr. Luz Teixeira performed a consultative psychological evaluation of Plaintiff, who reported having depression for the past two years which had worsened over the past year. (Tr. 120). On exam, she was alert and oriented, her affect was anxious, and her mood was depressed. (Tr. 121). Her insight and judgment did not seem impaired, though her attention and concentration seemed poor. Id.

In testing, Plaintiff appeared tense and anxious, which Dr. Teixeira felt might have impacted her performance. Id. Plaintiff fell in the borderline range of nonverbal intelligence, and her

performance on the Wechsler Intelligence Scale, Third Edition (WAIS-III), placed her in the extremely low to borderline range of intellectual functioning. Id. Her verbal fluency was in the average range and her computation and concentration in math was also average. (Tr. 122). Testing also indicated mild visuo-perceptial motor problems, poor immediate recall, difficulty possessing new information and difficulty retaining information over time. (Tr. 122-123). While Dr. Teixeira felt Plaintiff's test results were a fairly reliable indication of her cognitive functioning, he noted that her results in the WAIS-III "should be regarded with caution, as this instrument is not normed for Hispanic populations." (Tr. 121).

Plaintiff reported having sleeping problems and stated that she cleaned when she had energy, cooked, shopped and managed her household finances. (Tr. 123). She watched television, walked "a little" and socialized occasionally with friends. Id. Plaintiff's concentration was assessed as poor, her task performance was adequate, and she responded appropriately to supervision. Id. Dr. Teixeira assessed major depressive disorder, single episode, severe without psychotic features, a generalized anxiety disorder and a cognitive disorder. (Tr. 125).

On August 14, 2004, State Agency Psychologist Clifford Gordon reviewed the record available at that time and opined that, despite some moderate mental limitations, (Tr. 126-127), Plaintiff could understand and remember routine, repetitive tasks consisting of two to three steps, could complete routine, repetitive tasks in two-hour blocks over the course of an eight-hour day, could take part in team tasks or work with the public, could follow through on routine repetitive tasks and could adapt to ordinary changes in the workplace. (Tr. 210).

On September 22, 2004, Dr. William Palumbo performed a consultative medical evaluation of Plaintiff who complained of hypertension, arthritis of the shoulders, arms, legs and hands, left arm

problems, shortness of breath and coronary artery disease. (Tr. 130). She reported difficulty lifting heavy objects, but could lift a gallon of milk and could carry bundles out of the supermarket without difficulty. Id. She felt she could walk about three blocks but had shortness of breath if she walked further. Id. She reported that a past EKG had been normal and that she was told her chest discomfort was due to anxiety. Id.

On exam, Plaintiff was found to be overweight and in no apparent distress. Id. She could walk and maneuver onto the exam table without difficulty. (Tr. 131). She had full range of motion of the arms and legs, no evidence of muscle wasting, and a normal gait, and she could flex at the waist and straighten up again. Id. She could dress and undress without assistance, and her neurological exam was nonfocal. Id. Dr. Palumbo reported that while Plaintiff complained of arthritis, he found no evidence of swelling or joint deformity and an essentially normal musculoskeletal exam and normal gait. Id.

On September 27, 2004, State Agency Physician Stephen Fish reviewed the record available at that time and opined that Plaintiff's impairments were not of listing-level severity, (Tr. 140), and that she had exertional capacities consistent with the performance of light work and no nonexertional physical limitations. (Tr. 133-136).

On November 5, 2004, Dr. Teixeira performed a second consultative psychological evaluation of Plaintiff, who complained of depression and memory problems. (Tr. 188). She reported that her depression had gotten worse in the past year and that she left her last job two years ago because she could not handle the stress. (Tr. 189). On exam, she had an anxious affect and depressed mood, her insight and judgment were unimpaired and her attention and concentration appeared to be poor. (Tr. 190). Dr. Teixeira noted that Plaintiff appeared a little tense and anxious

at the beginning of testing, and he again commented that her WAIS-III results should he regarded with caution, as the test is not normed for Hispanic populations. Id. Nonetheless, he felt Plaintiff's test results were a fairly reliable indication of her cognitive functioning. Id. On testing, Plaintiff's nonverbal intelligence was assessed at the upper end of the borderline range, her intellectual functioning on the WAIS-III was at the extremely low to borderline range, her verbal fluency was at the high average range and her computation and concentration on orally presented math problems was average. (Tr. 190-191). Plaintiff's immediate recall was poor, and she showed difficulty processing new information. (Tr. 191). Plaintiff reported that she lived alone, slept eight hours a night with a sleeping pill, did household chores "when she can," went shopping and managed her finances. (Tr. 192). She watched television and socialized occasionally with friends. Id. Her concentration was assessed as poor, task performance was adequate, and she responded appropriately to supervision. Id. Dr. Teixeira assessed major depressive disorder, single episode, severe without psychotic features, a generalized anxiety disorder and a cognitive disorder. (Tr. 193).

On December 29, 2004, State Agency Psychologist J. Stephen Clifford reviewed the record available at that time and opined that despite some moderate limitations, (Tr. 211-212), Plaintiff could understand and remember simple tasks of 1-2-3 recurring steps and could finish most assignments, albeit at a slow pace. (Tr. 213). Plaintiff also had no impairment in social skills or ability to cooperate with coworkers, and was able to cook, shop and perform most household chores. Id.

In June 2005, State Agency Physician Thomas Bennet reviewed the record available at that time and opined that Plaintiff's impairments were not of listing-level severity (Tr. 275) and that

Plaintiff had exertional capacities consistent with the performance of light work and no nonexertional physical limitations. (Tr. 268-274).

On June 13, 2005, Plaintiff reported that she had less chest pressure and less anxiety and was using Klonopin with good results. (Tr. 330). Dr. Ng found a normal exam and assessed chest pain, hypertension and hyperlipidemia. (Tr. 331). On July 13, 2005, Dr. Ng completed an "Emotional Impairment Questionnaire" in which she checked off a "yes" response as to whether Plaintiff had an emotional impairment that significantly limited her ability to work. (Tr. 277). She reported diagnoses of depression, anxiety and low-borderline intelligence and reported Plaintiff's complaints of sadness, anxiousness and poor sleep. Id. She checked off a "no" response as to whether Plaintiff could work on a full-time basis, stating that Plaintiff had a decreased ability to understand and follow instructions for employment. (Tr. 278). On August 11, 2005, Plaintiff felt well, had a normal physical exam and her depression/anxiety were stable. (Tr. 333-334).

On April 27, 2006, Plaintiff reported to Dr. Ng that she was less anxious on paroxetine (Paxil) and was walking about two hours a day. (Tr. 347). Dr. Ng assessed controlled hypertension, muscular lower back pain, depression and anxiety better on paroxetine, and osteoporosis for which she recommended daily exercise. (Tr. 348). On July 27, 2006, Plaintiff reported to Dr. Ng that she started seeing a counselor, who was somewhat helpful, and that she had no chest pain and had shortness of breath only when anxious and walked for an hour a day. (Tr. 357). On exam she was a little anxious and had a normal gait. (Tr. 357-358).

Plaintiff started counseling in June 2006, which focused on her depression and anxiety over attempting to obtain disability benefits. (Tr. 370-372). A treatment note states that she was stressed about getting disability benefits, felt she could not work due to headaches and arthritis and had not

tried working in two years due to tension and feeling panicky. (Tr. 362). On October 3, 2006, Plaintiff reported that her arthritis medication worked but that she had no energy, (Tr. 372), and her counselor tried to "focus on getting [Plaintiff] to try to work." Id.

At the November 17, 2006 hearing, Plaintiff testified that she was unable to work due to pain in both shoulders which occurred when she exercised or did sudden lifting. (Tr. 391). Etodolac, an anti-inflammatory, reduced her pain from a six or seven out of ten to a two or three. (Tr. 391-392). She also testified that she could not stand very long because she would feel numb. (Tr. 399). However, she was not sure how long she could stand or how much she could lift. Id. She also testified that she stopped working due to stress and that she could not handle the noise around her at work and had difficulty concentrating and remembering "many times." (Tr. 401). She stated that she had difficulty sleeping and was stressed and worried. Id. She also complained of having headaches when she worried which improved with Tylenol. (Tr. 394). Plaintiff testified that she did household chores slowly due to high blood pressure. (Tr. 393). She did her own shopping and only purchased small quantities because she walked to the store. Id. She walked for thirty to forty minutes a day for exercise. Id. She read for fifteen to twenty minutes a day. (Tr. 396). She testified that she only started counseling recently because she could not afford it previously. (Tr. 397). Her medication helped with her anxiety and depression, (Tr. 403), and she had no problems getting along with others. (Tr. 400).

The medical expert, Dr. Gaeta, testified that Plaintiff's "main issue" was her depression. (Tr. 398). He testified that with medication, most of Plaintiff's blood pressure readings were in the normal range, that her high cholesterol had not caused any impairments and that she was taking medication for osteoporosis. Id. He opined that Plaintiff could perform light work. Id.

The vocational expert, Mr. Sabella, testified that Plaintiff had previously worked as an office cleaner, which was light, unskilled work, and as a jewelry assembler, which was sedentary, unskilled work. (Tr. 404). He was asked to assume an individual of Plaintiff's age, education and work experience who could perform light exertional work and could understand, remember and carry out 1-2-3 step tasks during an eight-hour day with breaks every two hours. Id. He testified that such an individual could perform Plaintiff's past relevant work as an office cleaner and jewelry assembler. Id. He further testified that such work could be performed with a moderate limitation in the ability to respond appropriately to customary work pressures and a limitation from repetitive overhead reaching. Id.

The ALJ decided this case adverse to Plaintiff at step four. At steps two and three, she found that Plaintiff had severe impairments consisting of depression, a cognitive disorder not otherwise specified, anxiety, osteoporosis and osteoarthritis but that she had no impairment(s) of listing-level severity. (Tr. 24-25). The ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform light exertional work and to understand, remember and carry out simple, 1-2-3 step instructions over an eight-hour day with appropriate breaks every two hours. (Tr. 25). The ALJ ended her analysis at step four of the sequential evaluation process, finding that Plaintiff was not disabled because she could perform her past relevant work as an office cleaner or jewelry assembler. (Tr. 28).

### A. The ALJ's Failure to Inquire Under SSR 00-4p Does Not Require Remand in This Case

Plaintiff first argues that remand is required because the ALJ violated her administrative responsibility to ask the VE if his testimony is consistent with the Dictionary of Occupational Titles ("DOT"). SSR 00-4p requires that an ALJ affirmatively ask a VE if his or her testimony is

consistent with the occupational information contained in the DOT. It is undisputed that the ALJ did not make this inquiry. Plaintiff offers no evidence or argument that the VE's testimony in fact contradicted the DOT. Rather, Plaintiff essentially seeks remand based solely on the technicality of failing to ask the question.

Although the First Circuit has not addressed this particular issue, other courts in this Circuit have held that "the mere failure to ask such a question cannot by itself require remand; such an exercise would be an empty one if the [VE's] testimony were in fact consistent with the DOT." Hodgson v. Barnhart, No. 03-185-B-W, 2004 WL 1529264 (D. Me. June 24, 2004). See also Wilcox v. Barnhart, No. Civ. 03-408-PB, 2004 WL 1733447 (D.N.H. July 28, 2004). In this case, the VE's testimony before the ALJ was brief and straightforward. (Tr. 403-405). The VE testified that the hypothetical RFC posed (and adopted) by the ALJ would not prevent Plaintiff from performing her past work as an office cleaner or jewelry assembly as she actually performed those jobs. (Tr. 28, 80-82, 404). Plaintiff's counsel elected not to question the VE (Tr. 405) and has not presented any evidence of a conflict or other prejudicial error. Since Plaintiff has not argued or identified any such inconsistency, his argument is purely technical and constitutes, at worst, harmless error. Giles v. Barnhart, No. 06-28-B-W, 2006 WL 2827654 at *3 (D. Me. Sept. 29, 2006) (ALJ's failure to ask the SSR 00-4p question to the VE is harmless where claimant could return to past relevant work "as she performed it.").

**B. The ALJ Did Not Err by Failing to Utilize a Mental Health Expert**

Plaintiff next argues that the ALJ erred by failing to obtain medical expert testimony from a psychologist or psychiatrist. Thus, Plaintiff contends that the ALJ did not have a sufficient evidentiary basis to assess Plaintiff's mental RFC. Defendant counters that the use of a medical

expert is discretionary, 20 C.F.R. § 416.927(f)(2)(iii), and it was not necessary in this case because the record is "replete with evidence" concerning Plaintiff's mental impairments.

The ALJ did utilize a medical expert at the hearing. Dr. Joseph Gaeta, a specialist in "internal medicine" (Tr. 398), testified as to Plaintiff's physical illnesses. (Tr. 397-399). Dr. Gaeta concluded that Plaintiff could perform "light work" from a "medical point of view." (Tr. 298). In her decision, the ALJ found that Plaintiff suffered from depression, anxiety and a cognitive disorder (Tr. 24) and that such impairments limited Plaintiff to jobs "which could accommodate a limitation in concentration, persistence and pace." (Tr. 25). In particular, Plaintiff "can understand, remember and carry out simple 1-2-3 step instructions over an 8 hour day with appropriate breaks every 2 hours." Id.

"[T]he decision whether to call a medical expert to testify at the hearing before the [ALJ] remains within the discretion of the commissioner and the failure to do so may not provide the basis for vacating the decision of the commissioner." Hodgkins v. Barnhart, No. 03-179-P-H, 2004 WL 1896996 (D. Me. Aug. 25, 2004) (citing Rodriguez Pagan, 819 F.2d at 5). Thus, the issue is not whether the ALJ should have called a medical expert but rather whether the ALJ's mental RFC assessment is supported by substantial evidence in the absence of medical expert testimony. I find that the ALJ's mental RFC assessment is well supported, and Plaintiff has shown no reversible error.

The ALJ found that Plaintiff was limited to "1-2-3 step instructions" (Tr. 25), and in reaching this conclusion, she accorded "significant probative value" to the state agency medical sources. (Tr. 27). Dr. Gordon found that Plaintiff had no listing-level mental impairment(s) (Tr. 195, 209) and that she retained the mental RFC to "understand and remember basic routine repetitive tasks that have 2-3 consistent steps to them." (Tr. 210). Similarly, Dr. Clifford opined that Plaintiff had no

listing-level mental impairment(s), (Tr. 215, 229), and that she retained the mental RFC to "understand and remember simple tasks only of 1-2-3 recurring steps." (Tr. 213). These psychologists assessed no additional mental limitations on Plaintiff's ability to work, and the ALJ's RFC clearly tracks their opinions. Thus, it is readily apparent that the ALJ relied on the state agency assessments, which were based on Dr. Teixeira's evaluations[1] and other relevant evidence of record, (See Tr. 207, 209-210, 213, 227, 229), in evaluating Plaintiff's mental RFC. Further, the ALJ also permissibly considered (Tr. 25-27) evidence of Plaintiff's daily activities and social interactions, (see Tr. 93-95, 123, 192), as well as her positive response to medication (see Tr. 172, 330, 347). Thus, the ALJ's RFC was not "crafted out of whole cloth" as argued by Plaintiff, and is clearly supported by substantial evidence and entitled to deference.

Plaintiff also attacks the ALJ's interpretation of Dr. Teixeira's evaluations as unsupported. For instance, Plaintiff points to the ALJ's comment that "Dr. Teixeira felt the claimant's anxiety impacted on her test performance," (Tr. 26), and argues that this statement is inconsistent with Dr. Teixeira's actual comments. As Plaintiff notes, Dr. Teixeira stated that she was "quite tense and anxious during the evaluation" which "might" have impacted her performance on the first testing. (Tr. 121). Plaintiff accurately asserts that no such statement appeared in Dr. Teixeira's second report. However, Dr. Teixeira did state in this report that Plaintiff "appeared a little tense and anxious in the beginning of the [second] evaluation." (Tr. 190). Nonetheless, even if the ALJ misinterpreted Dr. Teixeira's statements, there is no indication that the ALJ placed any significant weight on them. To the contrary, as discussed above, the ALJ relied largely on the assessments of

[1] Dr. Gordon had the benefit of Dr. Teixeira's first psychological evaluation and testing results, and Dr. Clifford had the benefit of both of Dr. Teixeira's evaluations.

Dr. Clifford and Dr. Gordon, who considered Dr. Teixeira's evaluations and other relevant evidence in rendering their opinions concerning Plaintiff's mental functioning.

Plaintiff next contends that the ALJ made "much of" Dr. Teixeira's statements that Plaintiff's WAIS-III scores should be viewed "with caution" because the test is not normed for Hispanic populations. (Tr. 121, 190). While Plaintiff refers to this statement from Dr. Teixeira as "boilerplate" in an attempt to discount its significance, (Document No. 5 at 12), the fact that Dr. Teixeira included the "caution" in both of her reports shows that she felt it was an important consideration. However, there is no indication that the ALJ attached any undue weight to this statement or that she rejected Plaintiff's scores. Rather, as previously discussed, the ALJ simply noted the statement, but nonetheless gave "significant probative value" to the assessments of Dr. Clifford and Dr. Gordon, which were based in part on Dr. Teixeira's findings and test results.

Finally, Plaintiff states that the ALJ also "makes much of" (Document No. 5 at 12) Dr. Teixeira's report that she scored in the average range on selected tests in the Escala de Inteligencia Wechsler Para Adultos. (Tr. 122, 191). Again, while the ALJ noted this comment, among others, (Tr. 26), there is no indication that she gave it any undue weight. Plaintiff contends that the "only way to interpret the ALJ's summary of Dr. Teixeira's findings is that [she] is not disabled, but rather simply does not speak English." Document No. 5 at 12-13. It is undisputed that Plaintiff does not speak English. However, the ALJ did not interpret Dr. Teixeira's findings so narrowly. To the contrary, the ALJ imposed significant nonexertional limitations on Plaintiff's mental RFC due to her memory and concentration problems by restricting Plaintiff to work requiring "simple 1-2-3 step instructions." (Tr. 25). In doing so, the ALJ considered Dr. Teixeira's reports and also the

assessments of the state agency psychologists, who are experts in evaluating evidence such as Dr. Teixeira's raw test scores. Plaintiff improperly asks this Court to substitute its judgment for the ALJ's as to the weight of the evidence. Benetti v. Barnhart, 193 Fed. Appx. 6, 2006 WL 2555972 (1st Cir. 2006) (per curiam) ("The ALJ's resolution of evidentiary conflicts must be upheld if supported by substantial evidence, even if contrary results might have been tenable also."). It is not this Court's role to second-guess the ALJ's reasonable interpretation of the evidence. Rather, the Court's role is to determine if the ALJ's findings based on such interpretation are supported by substantial evidence. They are in this case. Plaintiff has shown no reversible error as to the ALJ's mental RFC finding.

## VI. CONCLUSION

For the reasons stated above, I recommend that the Commissioner's Motion for an Order Affirming the Decision of the Commissioner (Document No. 6) be GRANTED and that Plaintiff's Motion to Reverse Without a Remand for a Rehearing or, Alternatively, with a Remand for a Rehearing (Document No. 5) be DENIED.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within ten (10) days of its receipt. See Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
December 27, 2007